Howard Marc Spector
TBA # 00785023
S.D. Tex. 23274
Sarah M. Cox
TBA #24119316
S.D. Tex. 3408534
SPECTOR & COX, PLLC
12770 Coit Road, Suite 1100
Dallas, Texas 75251
(214) 365-5377
FAX: (214) 237-3380
Hspector@spectorcox.com

PROPOSED COUNSEL
FOR THE DEBTOR

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **IRON HORSE TOOLS, LLC** | § | **Case No. 20-20272** |
| | § | |
| **Debtor.** | § | **(Chapter 11)** |

**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN INTERIM AND FINAL ORDER TO APPROVE POST-PETITION FINANCING IN ACCORDANCE WITH F.R.B.P. 4001(c)**

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 14 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

**Emergency relief has been requested. If the Court considers the motion on an emergency basis, then you will have less than 21 days to answer. If you object to the requested relief or if you believe that the emergency consideration is not warranted, you should file an immediate response.**

**A hearing has been scheduled for on the foregoing matter for August 21, 2020, at 2:30 p.m. (Central Time) by telephone and/or video conference.**

**Audio communication will be by use of the Court's dial-in facility.  You may access the facility at 832-917-1510.  You will be responsible for your own long-distance charges.   Once connected, you will be asked to enter the conference room number.  Judge Jones's conference room number is 205691.**

**You may view video via GoToMeeting.  To use GoToMeeting, the Court recommends that you download the free GoToMeeting application.   To connect, you should enter the meeting code "Judge Jones" in the GoToMeeting app or click the link on Judge Jones's home page on the Southern District of Texas website at https://www.txs.uscourts.gov/content/chief-united-states-bankruptcy-judge-david-r-jones. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of the hearing.  To make your electronic appearance, go to the Southern District of Texas website at https://www.txs.uscourts.gov/, and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Jones.  Under "Electronic Appearance" select "Click here to submit Electronic Appearance."   Select the case name, complete the required fields, and click "Submit" to complete your appearance.**

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

COMES NOW Iron Horse Tools, LLC (the "**Debtor**") and files this Motion to Approve Post-Petition Financing in Accordance with F.R.B.P. 4001(c) (this "**Financing Motion**"), and, in support thereof, the Debtor states as follows:

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter constitutes a core proceeding as defined in 28 U.S.C. §§ 157(b)(2).  Venue for this case is properly laid in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicate for the relief sought herein is 11 U.S.C. § 364 and Federal Rule of Bankruptcy Procedure 4001(c).

3.      On August 18, 2020, the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

4.      The Debtor is national provider of pressure control-related equipment and services with seven locations supporting oil and gas operations throughout the country. Among other services, the Debtor provides chokes and related pressure control equipment and software, mud-gas devices, rotating control devices and testing services throughout the United States.

5.      Aside from taxing authorities, the Debtor has one secured creditor, Bluehenge Capital Secured Debt SBIC, L.P. ("**Lender**") which has a lien securing debt of approximately $15 million.  The Debtor has unsecured claims totaling approximately $5.1 million.

6.      The Debtor expects to promptly seek Court approval to employ an investment banker to market the Debtor for sale in order to maximize a recovery for its creditors and equity holders.

7.      The Debtor requires post-petition financing to bridge any gap between monthly payables and revenue so as to afford the investment banker sufficient time to undertake and complete a marketing process, and to close any transaction. If the marketing process is unsuccessful, the Debtor requires the same financing to propose and confirm a plan.

## RELIEF REQUESTED

8.      By this Financing Motion, the Debtor seeks approval from this Court, to obtain financing in an amount not to exceed $1,500,000 (the "**Post-Petition Financing**") and to enter into the proposed DIP Loan Financing Agreement (the "**Post-Petition Financing Agreement**") and Debtor in Possession Promissory Note ("**Note**") (together with the Post-Petition Financing Agreement, the "**Loan Documents**") attached hereto as Exhibit "A1" and "Exhibit "A2".  Pursuant to 11 U.S.C. §§ 105, 362(a), 364(c)(1), 364(c)(2), 364(c)(3), and 364(d) and Bankruptcy Rules 4001 and 9014, the Debtor requests approval of interim and final orders approving the Post-Petition Financing.  Lender has agreed to provide the Post-Petition Financing, provided that it is

granted liens and security interests in all of the Debtor's assets (junior only to the existing liens on all of the assets of the Debtor), together with a superpriority administrative expense claim under Section 364(c)(1) to secure the Post-Petition Financing advanced by to or for the benefit of the Debtor's estate. The Lender has agreed to provide the necessary funding, so long as the advances made by the Lender are afforded the protections set forth in the Post-Petition Financing Agreement.

9.      The following chart is provided in compliance with Federal Rule of Bankruptcy Procedure 4001(c)(1)(B):

| Type of Provision and Relevant Rule | Summary, Nature, Extent, and Explanation | Reasons | Specific Location of The Provision |
|---|---|---|---|
| **Interest rate; F.R.B.P. 4001(c)(1)(B)** | 9% non default; 18% default. | Compensation to Lender for risk and use of advanced funds | Note § 3 |
| **Maturity; F.R.B.P. 4001(c)(1)(B)** | Plan confirmation or August 20, 2021, whichever is earlier | Provides time for plan and marketing of Debtor | Note § 2 |
| **Events of default; F.R.B.P. 4001(c)(1)(B)** | <ul><li>the failure of Borrower to pay the amount of the DIP Note in full, with interest, on or before August 20, 2021</li><li>the filing of a plan of reorganization by Borrower that does not repay the DIP Note in full;</li><li>the Borrower's failure to make any payment required with respect to the DIP Note;</li><li>the Borrower's failure to timely promptly provide Lender any required financial reports required hereby or any other requested financial information;</li><li>the Borrower's failure to adhere to the court-approved budget.</li></ul> | Lender's condition of loan | Post-Petition Financing Agreement at ¶ 7 |
| **Borrowing limits; F.R.B.P. 4001(c)(1)(B)** | $1,500,000.00 | Maximum availability made available by Lender | Note at p.1; Post-Petition Financing Agreement at p. 4 |

| | | | |
|---|---|---|---|
| **Borrowing conditions; F.R.B.P. 4001(c)(1)(B)** | • Monies are to be used fund the operations of Borrower in accordance with the court-approved budget and to fund the payment of legal fees and costs associated with the bankruptcy<br>• Debtor to provide 13 week cash flow forecast with Vendor Payment Plan and Cost Reduction Plan<br>• Debtor to provide periodical financial reports required under Note Purchase Agreement<br>• Debtor to deliver to Lender on biweekly basis updated accounts receivable, cash collateral, and borrowing base report<br>• Borrower to deposit (or direct customers to deposit) all payments into a bank account under the control of Lender at a bank approved by the Office of the United States Trustee or the Bankruptcy Court.<br>• Borrower shall not maintain other bank accounts | Lender's condition of loan | Post-Petition Financing Agreement at ¶ 2 |
| **Liens; F.R.B.P. 4001(c)(1)(B)(i)** | • First priority other than tax liens (subject to professional carve-out)<br>• superpriority expense claim | Compensation to Lender for risk and use of advanced funds | Post-Petition Financing Agreement at ¶ 3 |
| **Determination of the Validity et al. of Claims that Arose Prior to Bankruptcy Case. 4001(c)(1)(B)(iii)** | Waived by Debtor | Lender's condition of loan | Post-Petition Financing Agreement at ¶ 3, 11 |
| **Waiver and Release of claims; F.R.B.P. 4001(c)(1)(B)(viii)** | • Debtor waives the right to seek a surcharge pursuant to Section 506 (c) of the United States Bankruptcy Code;<br>• waives any and all claims and defenses against Lender, including any causes of action arising under Chapter 5 of the United States Bankruptcy Code<br>• Debtor waives the right to notice prior to action by | Lender's condition of loan | Post-Petition Financing Agreement at ¶ 3, 7, 10, 11 |

| | Lender in the event of default. | | |
|---|---|---|---|
| **Indemnification; F.R.B.P. 4001(c)(1)(B)(ix)** | Debtor indemnifies and holds harmless lender and its successors, assigns, parents, subsidiaries, affiliates, officers, employees, directors, agents and attorneys | Lender's condition of loan | Post-Petition Financing Agreement at ¶ 9, 10 |

The Debtor does not believe that any other provisions of Federal Rule of Bankruptcy Procedure 4001(c)(1)(B) apply to the Post-Petition Financing.

10.     The Debtor is unable to obtain unsecured credit allowable under 11 U.S.C. § 503(b)(1), or pursuant to 11 U.S.C. §§ 364(a) and (b). Other than the Lender's proposed advances, and the consensual use of cash collateral of the Lender, no source of credit for the Debtor's estate exists, whether interim or otherwise.

11.     The extension of credit as provided under the terms and conditions hereof is necessary to preserve the Debtor's estate and its assets. In the absence of such financing, the Debtor will not have the financial wherewithal to operate, to market its assets for sale, or to maximize the value of the Debtor's assets.

## LAW AND ARGUMENT

12.     The Court should authorize the Debtor, as an exercise of its sound business judgment, to enter into the Post-Petition Financing Agreement so as to obtain access to the Post-Petition Financing.

### The Post-Petition Financing is an Exercise of the Debtor's Sound Business Judgment

13.     Section 364 of the Bankruptcy Code authorizes a debtor to obtain secured or superpriority financing under certain circumstances discussed in detail below. Courts grant a debtor-in-possession considerable deference in acting in accordance with their business judgment in obtaining postpetition secured credit, so long as the agreement to obtain such credit does not

run afoul of the Bankruptcy Code. *See, e.g., In re N. Bay Gen. Hosp., Inc.,* No. 08-20368 (Bankr. S.D. Tex. July 11, 2008) (order approving postpetition financing on an interim basis as exercise of debtors' business judgment); *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); *In re Ames Dep't Stores, Inc.,* 115 B.R. at 40 ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.").

14. To determine whether the business judgment standard is met, a court need only "examine whether a reasonable businessperson would make a similar decision under similar circumstances." *In re Exide Techs.,* 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981) (noting that courts should not second guess a debtor's business decision when that decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of [the debtor's] authority under the [Bankruptcy] Code").

15. When considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the potential lender. *In re Farmland Indus.*, 294 B.R. at 886; *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Elingsen McLean Oil Co., Inc.)*, 65 B.R. 358, 365 n.7 (W.D. Mich. 1986) (recognizing a debtor may have to enter into "hard bargains" to acquire funds for its reorganization).

## The Debtor Should Be Authorized to Grant
## Liens and Superpriority Claims to the Lender

16.     The Debtor intends to provide security interests and liens as set forth in the Post-Petition Financing Agreement pursuant to section 364(c) of the Bankruptcy Code. Specifically, the Debtor proposes to provide to the Lender continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in, and liens on, Lender's pre-petition collateral.

17.     The statutory requirement for obtaining postpetition credit under section 364(c) of the Bankruptcy Code is a finding, made after notice and hearing, that a debtor is "unable to obtain unsecured credit allowable under Section 503(b)(1) of [the Bankruptcy Code]." 11 U.S.C. § 364(c); *see In re Crouse Grp., Inc.,* 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (secured credit under section 364(c) of the Bankruptcy Code is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained).

18.     Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code. Specifically, courts look to whether: (a) the debtor is unable to obtain unsecured credit under section 364(b) of the Bankruptcy Code, i.e., by allowing a lender only an administrative claim; (b) the credit transaction is necessary to preserve the assets of the estate; and (c) the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and proposed lenders. *See In re Ames Dep't Stores,* 115 B.R. at 37–40; see also *In re St. Mary Hosp.*, 86 B.R. 393, 401-02 (Bankr. E.D. Pa. 1988); *In re Crouse Grp.*, 71 B.R. at 549.

19.     The Debtor meets this test. Due to the Debtor's financial condition and the current macroeconomic climate, no lenders are willing to provide postpetition financing with beneficial terms and conditions junior to the Lender. The Lender will not fund under the Post-Petition

Financing Agreement on any other terms, and no other party has presented a better debtor-in-possession financing proposal. Absent the Post-Petition Financing Agreement, which will provide certainty that the Debtor will have sufficient liquidity to operate its business in the ordinary course, the value of the Debtor's estate would be impaired. Given the Debtor's circumstances, the Debtor believes that the terms of the Post-Petition Financing Agreement, as set forth in the Loan Documents are fair, reasonable, and adequate. For all these reasons, the Debtor has met the standard for obtaining postpetition financing.

20.     In the event a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, section 364(c) of the Bankruptcy Code provides that a court "may authorize the obtaining of credit or the incurring of debt (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of [the Bankruptcy Code]; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien." The Debtor is unable to obtain unsecured credit in the magnitude of the Post-Petition Financing. Therefore, approving superpriority claims in favor of the Lender is reasonable and appropriate.

### Failure to Obtain Immediate Interim Access to the Post-Petition Financing Would Cause Immediate and Irreparable Harm.

21.     Bankruptcy Rules 4001(c) provide that a final hearing on a motion to obtain credit pursuant to section 364 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court may conduct a preliminary, expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

22.     For the reasons noted above, the Debtor has an immediate post-petition need to use the funds provided by the Post-Petition Financing. The Debtor cannot maintain the value of its estate during the pendency of the chapter 11 case without access to this liquidity.

23.     The Debtor requests that the Court hold and conduct a hearing to consider entry of an interim order authorizing the Debtor to access the Post-Petition Financing as needed and on the terms provided in the interim order. This relief will enable the Debtor to preserve and maximize value and, therefore, avoid immediate and irreparable harm and prejudice to its estate and all parties in interest, pending the Final Hearing

## **Request for Final Hearing**

24.     Pursuant to Bankruptcy Rule 4001(c)(2), the Debtor requests that the Court set a date for the final hearing within approximately 30 days after the Petition Date, and fix the time and date prior to the final hearing for parties to file objections to this motion.

## **Notice**

25.     The Debtor will provide notice of this motion to: (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) holders of the 20 largest unsecured claims against the Debtor; (c) counsel to the Lender and (d) any party that requests service pursuant to Bankruptcy Rule 2002.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

26.     No prior request for the relief sought in this motion has been made to this or any other court.

**WHEREFORE,** the Debtor respectfully requests that this Court (i) grant the relief sought in this Financing Motion and enter an interim and final orders authorizing the Debtor to enter into

the Post-Petition Financing Agreement, and (ii) grant the Debtor such other and further relief as

may be just and equitable.

 Dated: August 18, 2020.

    Respectfully submitted,


    By:  */s/ Howard Marc Spector*
      Howard Marc Spector
      TBA #00785023
      S.D. Tex. 23274


    SPECTOR & COX, PLLC
    Banner Place, Suite 1100
    12770 Coit Road
    Dallas, Texas 75251
    (214) 365-5377
    FAX: (214) 237-3380
    EMAIL: hspector@spectorcox.com

    PROPOSED COUNSEL FOR DEBTOR

**Exhibit A1**

# DIP LOAN FINANCING AGREEMENT

This DIP Loan Financing Agreement (this "Agreement"), dated as of August __, 2020, is made by and between IRON HORSE TOOLS, L.L.C., a Texas limited liability company, and a debtor in possession under Case No. _____ (the "Case") pending in the United States Bankruptcy Court for the Southern District of Texas ("Borrower"), and BLUEHENGE CAPITAL SECURED DEBT SBIC, L.P., Texas limited liability company ("Lender").

**WHEREAS**, Borrower and Lender are parties to that certain Secured Note Purchase Agreement dated as of June 30, 2017, as amended by the First Amendment to Note Purchase Agreement dated as of December 18, 2017, by the Second Amendment to Note Purchase Agreement dated as of September 19, 2018, as amended and restated by that certain Amended and Restated Secured Note Purchase Agreement as of October 25, 2018, as amended by First Amendment to Amended and Restated Note Purchase Agreement dated as of April 30, 2020 (as so amended, the "Note Purchase Agreement"),[1] by which, upon the terms and subject to the conditions set forth in the Note Purchase Agreement, the Lender extended to the Borrower a multiple advance, non-revolving term loan in an aggregate amount not to exceed $18,500,000.00, evidenced by Borrower's issuance of that certain Secured Promissory Note dated October 25, 2018, payable to Lender in the principal amount of $18,500,000 (the "Existing Note");

**WHEREAS,** as security for payment of the Existing Note and the payment and performance of other obligations under the Note Purchase Agreement and the Related Documents and all amendments and modifications thereof, the Borrower entered into a Security and Pledge Agreement with Lender as of June 30, 2017 pursuant to which it granted Lender with a security interest in substantially all of its personal property (the "Security Agreement");

---

[1]        Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Note Purchase Agreement or the Forbearance (as defined below).

**WHEREAS,** Borrower, Lender, and J. Chris McClanahan entered into that certain Forbearance Agreement (the "Forbearance") dated November 4, 2019, wherein Borrower acknowledged, *inter alia*, (i) the existence of defaults and events of default under the Note Purchase Agreement  and (ii) that Lender had the right to one or more of the following options: (i) all rights and remedies granted to it under the Existing Note, the Note Purchase Agreement, the other Related Documents and this Agreement; (ii) all rights of a creditor under Applicable Law (including the UCC); (iii) right to accelerate payment of the Existing Note; and (iv) the right to exercise any and all rights, powers and remedies at law, in equity or by statute, in such manner as Lender shall determine in its sole and exclusive discretion;

**WHEREAS**, in exchange for and in consideration of Lender's agreement to forbear, Borrower granted the releases contained in the Forbearance;

**WHEREAS**, in exchange for and in consideration of Lender's agreement to forbear, Borrower expressly acknowledged and agreed that the Note Purchase Agreement and Related Documents constitute legal, valid, and binding obligations enforceable in accordance with their terms by Lender against the Borrower, and expressly reaffirmed each of its respective obligations under the Note Purchase Agreement and Related Documents.  Borrower further expressly acknowledged and agreed that Lender has a valid, duly perfected, first priority and fully enforceable security interest in and lien against each item of Collateral defined in the Note Purchase Agreement and Related Documents except as otherwise set forth in the Note Purchase Agreement and Related Documents.  Borrower further agreed that it would not dispute the validity or enforceability of the Note Purchase Agreement,  Related Documents or the Forbearance or any of its respective obligations thereunder, or the validity, priority, enforceability or extent of Lender's security interest in or lien against any item of Collateral, in any judicial, administrative

2

or other proceeding, either during or following the termination or expiration of the Forbearance Period;

**WHEREAS**, in exchange for and in consideration of Lender's agreement to forbear, Borrower represented and warranted that there was no defense, offset, compensation, counterclaim or reconventional demand with respect to amounts due under, or performance of the terms of, the Note Purchase Agreement, the Related Documents or the Forbearance; and to the extent any such defense, offset, compensation, counterclaim or reconventional demand or other causes of action might exist, whether known or unknown, such items were waived by Borrower.  Borrower further acknowledged that the Lender had fully performed and had fully complied with all requirements and obligations under the Note Purchase Agreement and Related Documents that were  required to be performed by the Lender;

**WHEREAS,** the Forbearance has expired by its own terms and, but for the protections of the automatic stay, Lender has the right to exercise all rights, powers, and remedies existing under the Note Purchase Agreement and any other documents entered into by Lender and Borrower and Lender has in fact accelerated payment of the Note by notice to Borrower dated July 1, 2020 and commenced the accrual of the Default Interest Rate;

**WHEREAS**, as of the date of the filing of the bankruptcy case (the "Petition Date"), the Existing Note had an outstanding principal balance of $15,026,550.41 as of August 18, 2020, is outstanding under the Note (the "Existing Indebtedness");

**WHEREAS**, Borrower is debtor in possession in Case No. 20-_____ pending in the United States Bankruptcy Court for the Southern District of Texas (the "Case"), and the Court in that Case has issued an order dated _____, 2020 authorizing the transactions contemplated hereby and

3

extends the benefits and security provided by the Collateral granted by Borrower to the new multiple advance loan facility contemplated hereby on the terms set forth in such order; and

**WHEREAS**, Borrower requires funding to operates its business in the ordinary course and has requested that Lender provide it with a new multiple advance, non-revolving working capital line of credit in a maximum aggregate amount of $1,500,000.00 to fund Borrower's operations, to pay legal fees and costs of documentation of this Agreement, and to pay fees and expenses associated with the bankruptcy of Borrower, and Lender is willing to provide such loan facility on the terms and conditions described herein.

**NOW THEREFORE**, in consideration of the mutual covenants, terms and conditions set forth herein, and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, Borrower and Lender agree as follows:

1. Borrower acknowledges that the balance of the Existing Indebtedness set forth in the recitals hereto are correct and that said Existing Indebtedness is fully due and owing by Borrower as of the date hereof.

2. Contemporaneously herewith, Borrower has executed and delivered to Lender that certain Debtor-in-Possession Promissory Note payable to the order of Lender in the amount of $1,500,000.00 (or such lesser amount as actually advanced) on demand, or if no demand is made, on in full on the earlier to occur of (i) the entry of a final, non-appealable order confirming a plan of reorganization or liquidation in the Case or (ii) August 20, 2021, and bearing interest at the rate or rates described therein (said promissory note, as amended or modified from time to time, together with any promissory note or notes given in renewal or replacement therefor, the "DIP Note"). Interest shall be due and payable monthly in accordance with the terms of the DIP Note.

5130799_6

Borrower may make requests for advances from Lender weekly under the DIP Note to use to fund the operations of Borrower in accordance with the court-approved budget and to fund the payment of legal fees and costs associated with the bankruptcy of Borrower and the documentation of this Agreement.  Lender may, but shall not be obligated, to make any such requested advance, each of which shall be completely optional on the part of Lender.

In no event shall an  advance under the DIP Note be made hereunder unless and until Lender has received an acceptable 13-week cash flow forecast supported by an accompanying Vendor Payment Plan and Cost Reduction Plan that shows the Borrower reaching a cash flow negative monthly deficit of no more than $150,000 (based on a four calendar month retroactive average) by the last day of the 4th month following the Case filing date.  The term "Loan Documents" as defined in the Note Purchase Agreement shall be deemed to include such agreements relating to the Borrower's Kleberg Bank, NA deposit accounts.

At its discretion, Lender may release its cash collateral held at Kleberg Bank, NA, or any other bank, to supplement or substitute for advances requested under the DIP Note.

3. Borrower (by virtue of and in accordance with a final order of the Bankruptcy Court): (i)  agrees that the Security Agreements heretofore granted encumbering Collateral owned by it are hereby amended to secure payment of the DIP Note as part of the indebtedness secured by such security agreements, along with all other Existing Indebtedness and other obligations already secured by such security agreements; (ii)

5

acknowledges the validity, perfection, and priority of the Existing Indebtedness, which is secured by a lien entitled to preference and priority over the claims of all other creditors; (iii) waives the right to seek a surcharge pursuant to Section 506(c) of the United States Bankruptcy Code; and (iv) waives any and all claims and defenses it may now have or which may hereafter accrue against Lender, including any causes of action arising under Chapter 5 of the United States Bankruptcy Code.  In addition, the obligations of this Agreement and repayment of the DIP Note, as well as the Debtor's DIP Loan Expense Obligation (as defined below), must, and shall, be secured by priming liens on all of Borrower's assets as set forth in an order or orders to be entered by the Bankruptcy Court.  Finally, Lender must, and shall, also be provided with a superpriority-expense claim as set forth in any order or orders to be entered by the Bankruptcy Court.

4.  The extension of any new credit by Lender under the DIP Note shall not in any way constitute a waiver of the existing Events of Default under the Existing Note or the Note Purchase Agreement.

5.  During the term of the DIP Note, Borrower shall timely provide Lender with the periodic financial reports required by Note Purchase Agreement (other than the audited annual financial statements of Borrower).  Notwithstanding the foregoing and without limiting Lender's discretion, Borrower shall deliver to Lender on a biweekly basis an updated accounts receivable, cash collateral, and borrowing base report, in a form acceptable to Lender.  In addition, Borrower shall promptly notify Lender upon receipt of any information concerning the creditworthiness of any of Borrower's customers.

6

6.  Borrower will advise its customers to pay Accounts owed by any one or more (or all) of them to a bank account under the control of Lender at a bank approved by the Office of the United States Trustee or the Bankruptcy Court.  In the event a customer shall send payments directly to Borrower, Borrower shall immediately deposit those sums into a bank account under the control of Lender at a bank approved by the Office of the United States Trustee or the Bankruptcy Court.  Borrower shall not maintain other bank accounts and shall transfer all funds from any other accounts to the bank accounts under the control of Lender.

7.  Unless waived by Lender in writing, an Event of Default shall be deemed to exist under this Agreement and the DIP Note upon the occurrence and during the continuance of any of the following: (i) the failure of Borrower to pay the amount of the DIP Note in full, with interest, on or before August 20, 2021; (ii) the filing of a plan of reorganization by Borrower that does not repay the DIP Note in full; (iii) the Borrower's failure to make any payment required with respect to the DIP Note; (iv) the Borrower's failure to timely promptly provide Lender any financial reports required hereby or any other reasonably requested financial information; or (v) the Borrower's failure to adhere to the court-approved budget.  Should an Event of Default occur or exist,  Lender shall have the immediate right, at the sole discretion of Lender and without notice, demand, presentment, notice of nonpayment or nonperformance, protest, notice of protest, notice of intent to accelerate, notice of acceleration, or any other notice or any other action **(ALL OF WHICH BORROWER HEREBY EXPRESSLY WAIVES AND RELINQUISHES TO THE EXTENT PERMITTED BY LAW):** (a) to declare the entire unpaid balance

7

of the indebtedness evidenced by the DIP Note (including, without limitation, the outstanding principal balance hereof, all sums advanced or accrued, and all accrued but unpaid interest thereon) at once immediately due and payable (and upon such declaration, the same shall be at once immediately due and payable) and may be collected forthwith, whether or not there has been a prior demand for payment and regardless of the stipulated date of maturity; (b) to foreclose any Liens and security interests securing payment hereof or thereof (including, without limitation, any Liens and security interests granted to Lender pursuant to the Security Agreement or otherwise); and (c) to exercise any of Lender's other rights, powers, recourses and remedies under the Loan Documents, with respect to any amounts advanced by Lender pursuant to this Agreement, or at law or in equity, and the same (i) shall be cumulative and concurrent, (ii) may be pursued separately, singly, successively, or concurrently against any Borrower or others obligated for the repayment of the DIP Note or any part hereof, or against any one or more of them, at the sole discretion of Lender, (iii) may be exercised as often as occasion therefor shall arise, it being agreed by Borrower that the exercise, discontinuance of the exercise of or failure to exercise any of the same shall in no event be construed as a waiver or release thereof or of any other right, remedy, or recourse, and (iv) are intended to be, and shall be, nonexclusive. All rights and remedies of Lender hereunder and under the other Loan Documents, with respect to any amounts advanced by Lender pursuant to this Agreement shall extend to any period after the initiation of foreclosure proceedings, judicial or otherwise.

8. **EXCEPT AS SPECIFICALLY PROVIDED IN THE LOAN DOCUMENTS TO THE CONTRARY, BORROWER WAIVES AND RELINQUISHES, TO**

5130799_6

**THE EXTENT PERMITTED BY LAW, PRESENTMENT FOR PAYMENT, DEMAND, NOTICE OF NONPAYMENT OR NONPERFORMANCE, PROTEST, NOTICE OF PROTEST, NOTICE OF INTENT TO ACCELERATE, NOTICE OF ACCELERATION OR ANY OTHER NOTICES OR ANY OTHER ACTION. BORROWER WAIVES AND RELINQUISHES, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO THE BENEFITS OF ANY MORATORIUM, REINSTATEMENT, MARSHALING, FORBEARANCE, VALUATION, STAY, EXTENSION, REDEMPTION, APPRAISEMENT, EXEMPTION AND HOMESTEAD NOW OR HEREAFTER PROVIDED BY THE CONSTITUTION AND LAWS OF THE UNITED STATES OF AMERICA AND OF EACH STATE THEREOF, BOTH AS TO ITSELF AND IN AND TO ALL OF ITS PROPERTY, REAL AND PERSONAL, AGAINST THE ENFORCEMENT AND COLLECTION OF THE OBLIGATIONS EVIDENCED BY THIS PROMISSORY NOTE OR BY THE OTHER LOAN DOCUMENTS.**

9. Borrower agrees that all costs and expenses of counsel to Lender incurred to document this Agreement and the DIP Note, to draft and/or comment on appropriate pleadings, proposed orders and other documents that will be submitted in the Case to approve this Agreement and the funding to be provided thereby, and to attend meetings and hearings as appropriate regarding this Agreement and such funding, and such reimbursement obligation (the "Debtor's DIP Loan Expense Obligation") shall also be secured by the security agreements and guaranties executed by the undersigned in favor of Lender. All amounts owed to Lender in accordance with this paragraph shall be in addition to the principal amount owed to Lender pursuant to the DIP Note.

10. IN FURTHER CONSIDERATION OF LENDER'S EXECUTION OF THIS AMENDMENT, BORROWER, INDIVIDUALLY AND ON BEHALF OF ITS SUCCESSORS AND ASSIGNS (INCLUDING, WITHOUT LIMITATION, ANY ANY DEBTOR-IN-POSSESSION), HEREBY FOREVER RELEASES LENDER AND ITS SUCCESSORS, ASSIGNS, PARENTS, SUBSIDIARIES, AFFILIATES (BUT NOT ANY AFFILIATE THAT IS A MEMBER OF THE BORROWER),

9

OFFICERS, EMPLOYEES, DIRECTORS, AGENTS AND ATTORNEYS (COLLECTIVELY, THE "RELEASEES") FROM ANY AND ALL DEBTS, CLAIMS, DEMANDS, LIABILITIES, RESPONSIBILITIES, DISPUTES, CAUSES, DAMAGES, ACTIONS AND CAUSES OF ACTIONS (WHETHER AT LAW OR IN EQUITY) AND OBLIGATIONS OF EVERY NATURE WHATSOEVER, WHETHER LIQUIDATED OR UNLIQUIDATED, WHETHER KNOWN OR UNKNOWN, MATURED OR UNMATURED, FIXED OR CONTINGENT (COLLECTIVELY, "CLAIMS") THAT BORROWER MAY HAVE AGAINST THE RELEASEES WHICH ARISE FROM OR RELATE TO ANY ACTIONS WHICH THE RELEASEES MAY HAVE TAKEN OR OMITTED TO TAKE PRIOR TO THE DATE OF THIS AMENDMENT, INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO THE OBLIGATIONS, ANY COLLATERAL, THE NOTE PURCHASE AGREEMENT AND RELATED DOCUMENTS AND ANY THIRD PARTIES LIABLE IN WHOLE OR IN PART FOR THE OBLIGATIONS.  THIS PROVISION SHALL SURVIVE AND CONTINUE IN FULL FORCE AND EFFECT WHETHER OR NOT (I) THE BORROWER SHALL SATISFY ALL OTHER PROVISIONS OF THIS AMENDMENT OR THE NOTE PURCHASE AGREEMENT AND RELATED DOCUMENTS INCLUDING PAYMENT IN FULL OF ALL OBLIGATIONS, OR (II) THIS AMENDMENT OTHERWISE IS TERMINATED.

THE BORROWER HEREBY AGREES TO INDEMNIFY AND HOLD THE RELEASEES HARMLESS WITH RESPECT TO ANY AND ALL LIABILITIES,

OBLIGATIONS, LOSSES, PENALTIES, ACTIONS, JUDGMENTS, SUITS, COSTS, EXPENSES OR DISBURSEMENTS OF ANY KIND OR NATURE WHATSOEVER INCURRED BY THE RELEASEES, OR ANY OF THEM, WHETHER DIRECT, INDIRECT OR CONSEQUENTIAL, AS A RESULT OF OR ARISING FROM OR RELATING TO ANY PROCEEDING BY, OR ON BEHALF OF ANY PERSON, INCLUDING, WITHOUT LIMITATION, OFFICERS, DIRECTORS, AGENTS, TRUSTEES, CREDITORS, PARTNERS OR SHAREHOLDERS OF THE BORROWER, WHETHER THREATENED OR INITIATED, ASSERTING ANY CLAIM FOR LEGAL OR EQUITABLE REMEDY UNDER ANY STATUTES, REGULATION OR COMMON LAW PRINCIPLE ARISING FROM OR IN CONNECTION WITH THE NEGOTIATION, PREPARATION, EXECUTION, DELIVERY, PERFORMANCE, ADMINISTRATION AND ENFORCEMENT OF THIS AMENDMENT, THE NOTE PURCHASE AGREEMENT AND RELATED DOCUMENTS OR ANY OTHER DOCUMENT EXECUTED IN CONNECTION THEREWITH. THE FOREGOING INDEMNITY SHALL SURVIVE THE PAYMENT IN FULL OF THE NOTE AND ALL OTHER OBLIGATIONS OF BORROWER TO LENDER UNDER THE NOTE PURCHASE AGREEMENT AND RELATED DOCUMENTS AND THE TERMINATION OF THE NOTE PURCHASE AGREEMENT AND RELATED DOCUMENTS.

11. Borrower expressly acknowledges and agrees that the Note Purchase Agreement, the DIP Loan Agreement, the Existing Note, the DIP Note and Related Documents constitute legal, valid and binding obligations enforceable in accordance with their

11

terms by Lender against the Borrower, and expressly reaffirms each of its respective obligations under each of those agreements which pre-date this Agreement.  Borrower further expressly acknowledges and agrees that Lender has a valid, duly perfected, first priority and fully enforceable security interest in and lien against each item of Collateral defined in the Security Agreement and Related Documents subject only to the liens of ad valorem taxing authorities.  Borrower agrees that it shall not dispute the validity or enforceability of the Note Purchase Agreement,  the DIP Loan Agreement, the Existing Note, the DIP Note and the Related Documents or any of their respective obligations thereunder, or the validity, priority, enforceability or extent of Lender's security interest in or lien against any item of Collateral, in any judicial, administrative or other proceeding, either during or following the termination or expiration of this Agreement.

12.  This Agreement and the DIP Note shall be governed by and construed in accordance with the laws of the State of Texas without regard to its conflict of law rules.

13. THIS AGREEMENT, TOGETHER WITH THE DIP NOTE AND THE OTHER LOAN DOCUMENTS, REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

*[Remainder of page intentionally left blank; signature pages follow]*

IN WITNESS WHEREOF, Borrower and Lender have executed this Agreement effective as of August __, 2020.

**BORROWER:**

IRON HORSE TOOLS, L.L.C.

By: _____

Its: _____

**LENDER:**

BLUEHENGE CAPITAL SECURED DEBT SBIC, L.P.

By:  BLUEHENGE CAPITAL SECURED DEBT SBIC GP,
     LLC, its General Partner

By: _____
       Ari David Kocen, Managing Member

13

# Debtor-In-Possession Promissory Note ("DIP Note")

| | |
|---|---|
| **Maker** | **Iron Horse Tools, L.L.C.** |
| **Payee** | **Bluehenge Capital Secured Debt SBIC, L.P.** |
| **Principal Amount** | **$1,500,000.00** |
| **Date of Note** | **August ___, 2020** |
| **Made At** | **Corpus Christi, Texas** |

*FOR VALUE RECEIVED*, the Maker hereby promises to pay to the order of the Payee the principal amount of **ONE MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($1,500,000.00)**, or such lesser amounts as may be accurately reflected from time to time on the books and records of Payee as evidencing the aggregate unpaid principal balance of loan advances made to Maker from time to time as provided below, upon the terms and subject to the conditions set forth in this Debtor-In-Possession Promissory Note ("DIP Note").

**Section 1.**          **Definitions and Miscellaneous Provisions**

All capitalized terms not otherwise defined in this DIP Note shall have the definition and meaning set forth in the DIP Loan Financing Agreement between Maker and Payee dated as of August __, 2020 (the "DIP Loan Agreement"),which definitions are, to the extent applicable, incorporated herein by reference. This DIP Note may evidence multiple loan Advances to be made at Payee's discretion in accordance with the terms of the DIP Loan Agreement. The provisions of Section 11 of the Note Purchase Agreement described in the DIP Loan Agreement are applicable to this DIP Note and are incorporated herein by reference.

**Section 2.**          **Maturity and Pay Off**

The unpaid Principal Amount of this DIP Note, together with all accrued but unpaid Interest and Assessments, shall be due and payable in full on August 20, 2021 (the "Maturity Date"). In addition, all accrued and unpaid Interest under this DIP Note shall be due and payable as provided in Section 3 of this DIP Note. Payment of the Principal Amount and all accrued but unpaid Interest and Assessments may be Accelerated upon the occurrence of an Event of Default as defined in the Purchase Agreement or as otherwise provided for in this DIP Note. Upon request of the Maker, the Payee will furnish to the Maker a letter setting forth the amount of Principal Amount, Interest and Assessments required to pay this DIP Note in full as of a specified Pay Off Date.

**Section 3.**          **Interest**

Interest shall accrue on the unpaid Principal Amount from the date of this DIP Note through and including the Maturity Date at the rate of nine percent (9.0%) per annum ("Interest"). All accrued but unpaid Interest shall be paid Monthly in arrears on the last day of each Month (a "Payment Date"), commencing on September 30, 2021, and on the last day of each Month thereafter until this DIP Note is paid in full. Notwithstanding the rate or rates of interest specified in the DIP Loan Agreement, upon the occurrence of an Event of Default as defined in the DIP Loan Agreement, the Payee may elect, in the sole exercise of its discretion, to impose the Default Interest Rate by giving written Notice of such election to the Maker ("Default Rate Election"). In the event of a Default Rate Election, the interest rate on this DIP Note shall be a fixed rate per annum equal to eighteen percent (18%) per annum (but in no event to exceed the Maximum Rate) (the "Default Interest Rate"), and the Default Interest Rate shall continue to be the interest rate on this DIP Note until the Event of Default has been remedied or waived and no other Default or Event of Default is continuing unremedied or unwaived, provided that the DIP Note has not been Accelerated. Notwithstanding any provision of this DIP Note to the contrary: (i) in no event shall the interest rate on this DIP Note be a rate per annum in excess of the maximum interest rate permissible under Applicable Law, and (ii) to the extent that Interest (or other amounts paid with respect to this DIP Note that are deemed to be interest under Applicable Law) results in interest payments in excess of those permitted under Applicable Law, such excess payments shall be applied first to the payment of the unpaid Principal Amount, second to the payment of any other amounts due from the Maker to the Payee, and third, if no other obligations are owing to the Payee, then refunded to the Maker. The Maker agrees that if such excess payments are applied in the manner provided for in this paragraph, then to the fullest extent permitted by Applicable Law, Payee shall not be subject to any penalty provided for by any Applicable Law relating to charging or collecting interest in excess of that permitted by Applicable Law. Interest shall be calculated based upon the actual number of days elapsed over each Month, including any additional days elapsed because the scheduled Payment Date fell on a day other than a Business Day.

Interest charges will be calculated on amounts advanced hereunder on the actual number of days these amounts are outstanding on the basis of a 360-day year, except for calculations of the Maximum Rate which will be based on the basis of a 365-day or 366-day year, as is applicable.

Maker agrees that the Maximum Rate to be charged or collected pursuant to this DIP Note shall be the applicable "weekly ceiling" specified in Chapter 303 of the Texas Finance Code, as may be amended, provided that Payee may rely on other applicable laws, including without limitation the laws of the United States, for calculation of the Maximum Rate if the application thereof results in a greater Maximum Rate.  The provisions of Chapter 346 of the Texas Finance Code (which regulates certain revolving loan accounts and revolving tri-party accounts), or any amendment or successor thereto, shall not apply to the DIP Note or the DIP Loan Agreement, or any of the Purchase Documents.  As used herein, the term "Purchase Documents" shall mean this DIP Note, the DIP Loan Agreement, the other Related Documents, and the Purchase Agreement.

It is expressly stipulated and agreed to be the intent of Maker and Payee at all times to comply with the applicable Texas law governing the maximum non-usurious rate or amount of interest payable on or in connection with the Obligations (or applicable United States federal law to the extent that it permits Payee to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law).  If the applicable law is ever judicially interpreted so as to render usurious any amount called for under the Purchase Documents, or contracted for, charged, taken, reserved or received with respect to the Loan, or if the acceleration of the maturity of the Obligations or if any prepayment by Maker results in Maker having paid any interest in excess of that permitted by law, then it is Maker's and Payee's express intent that all excess amounts theretofore collected by Payee be credited on the principal balance of this DIP Note (or, if this DIP Note has been or would thereby be paid in full, refunded to Maker), and the provisions of the Purchase Documents immediately be deemed reformed and the amounts thereafter collectible thereunder reduced, without the necessity of the execution of any new document, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder.  The right to accelerate maturity of Obligations does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration.  All sums paid or agreed to be paid to Payee for the use, forbearance or detention of the Obligations shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of the Obligations until payment in full so that the rate or amount of interest on account of the Obligations does not exceed the applicable usury ceiling.

**Section 4.     Prepayments**

The Maker may prepay the Principal Amount under the Loan in whole or in part from time to time at any time before the Maturity Date in not less than $100,000.00 increments.

**Section 5.     Late Payments**

A payment of Principal Amount, Interest, or Assessment shall be deemed to be in default if such payment is not made prior to 2:00 p.m., Dallas, Texas time on the fifth day after such payment is due.  The Payee may, in the sole exercise of its discretion, by Notice to the Maker, assess a delinquency charge on the amount of any installment or other amount in default for a period of not less than ten (10) days in an amount equal to the lesser of (i) $500.00 or (ii) 5% of the total amount of the late installment or other amount.  Such late fee shall be deemed to be an Assessment for purposes of this DIP Note.  The Payee may not assess a late fee with respect to any Payment Date after payment of this DIP Note is Accelerated.

**Section 6.     Payments**

Unless otherwise agreed by the Payee, all payments in connection with this DIP Note shall be made by check or wire transfer of immediately available funds to the account of the Payee at or before 2:00 p.m. Dallas, Texas time on each Payment Date.  Any wire transfer received by the Payee after 2:00 p.m. Dallas, Texas time shall be deemed to have been received by the Payee prior to such time on the next Business Day.  In the event that any scheduled Payment Date falls on a day other than a Business Day, the Payment Date shall be deemed to be the following Business Day, and such additional days shall be deemed to have elapsed for purposes of computing Interest payable on such Payment Date.

**Section 7.     Remedies and Acceleration**

(a)     *Remedies.*  Upon the occurrence of an Event of Default, the Payee shall have (i) all rights and remedies granted to it under this DIP Note and the DIP Loan Agreement and (ii) all rights of a creditor under Applicable Law (including the UCC).  All such rights and remedies and the exercise thereof shall be cumulative.  No exercise of any such rights and remedies shall be deemed to be exclusive or constitute an election of remedies.

(b)     *Acceleration of Payment.*  Upon the occurrence and during the continuation of any Event of Default, the Payee may, in the sole exercise of its discretion, elect to cause payment of this DIP Note to be Accelerated by giving Notice of such election to the Maker.  Once payment of this DIP Note has been Accelerated, such Acceleration may be revoked only by the Payee, in the sole exercise of its discretion, by giving Notice of revocation to the Maker.

(c)     *Waiver of Default.*  No Default or Event of Default may be waived or shall be deemed to have been waived except by an express Notice by the Payee to the Maker, and any such waiver shall be applicable only to the specific Defaults or Events of Default expressly identified in such Notice and shall not be deemed to apply to any other or subsequent Default or Event of Default.  The Payee may grant or withhold any such waiver in the sole exercise of its discretion, and may condition

such waiver upon the payment by the Maker of a premium, the grant of additional security interests or the acceptance of other terms and conditions under this DIP Note or the Purchase Agreement.  No course of dealing by the Payee, or the failure, forbearance or delay by the Payee in exercising any of its rights or remedies under this DIP Note, the Purchase Agreement or any Related Document shall operate as a waiver of any Default or Event of Default or of any right of the Payee under this DIP Note.

(d)  *Confirmation of Bankruptcy Plan*.  The entry of either (i) a final, non-appealable order confirming a plan of reorganization or liquidation or (ii) an order converting the case to one under Chapter 7 in Case No. 20-_____ pending in the United States Bankruptcy Court for the Southern District of Texas shall constitute an Event of Default such that the amounts due under this DIP Note shall be immediately due and payable.

**Section 8.       Waivers by Maker**
To the fullest extent permitted by Applicable Law, Maker waives with respect to this DIP Note: presentment; demand and protest; and notice of presentment, intent to accelerate, acceleration, protest, default, nonpayment, maturity, release, compromise, settlement, extension or renewal; and diligence in collection.  Maker agrees that the Payee may release all or any part of the collateral securing the payment of this DIP Note; any guarantor or surety with respect to this DIP Note, or any other Maker from its obligation with respect to this DIP Note, all without Notice to Maker and without affecting in any way the obligation of Maker under this DIP Note.

**Section 9.       Security for Payment**
Payment of this DIP Note is secured under the terms and subject to the conditions of the DIP Loan Agreement. Nothing in this DIP Note shall be deemed to preclude the Payee from obtaining other or additional security for the payment of this DIP Note, to require the Payee to elect remedies or proceed against any collateral or guaranty before Accelerating payment of this DIP Note or to take any legal or other action to collect payment of this DIP Note.

**Section 10.      Collection and Assessment for Costs**
The Maker shall reimburse the Payee for all reasonable costs and expenses (including reasonable legal fees and disbursements) incurred by the Payee in connection with the collection or attempted collection of the payment of this DIP Note through legal proceedings or otherwise following an Event of Default.  All such amounts shall be deemed to be Assessments for purposes of this DIP Note.

**Section 11.      Amendment**
This DIP Note may not be amended, restated, supplemented or otherwise modified except by an express written agreement executed and delivered by the Maker and the Payee.  Compliance with the covenants and other provisions of this DIP Note may not be waived except by an express written waiver signed and delivered by the Payee.

**Section 12.      Governing Law**
**This DIP Note was negotiated in the State of Texas and accepted by the Payee in the State of Texas, the purchase price for the Note shall be disbursed from the State of Texas, and all payments due under this DIP Note shall be paid to Maker's office in Dallas, Texas.  The Maker agrees that the State of Texas has a substantial relationship to the transactions evidenced hereby and further agrees that this DIP Note shall be governed by and construed in accordance with the laws of the State of Texas, without regard to conflicts of laws principles.**

**Section 13.      Waiver of Jury Trial**
**The Payee and the Maker, after consulting or having had the opportunity to consult with legal counsel, knowingly, voluntarily and intentionally waive any right any of them may have to a trial by jury in any Litigation. Neither the Payee nor the Maker shall seek to consolidate, by counterclaim or otherwise, any Litigation in which a jury trial has been waived with any other Litigation in which a jury trial cannot be or has not been waived.  These provisions shall not be deemed to have been modified in any respect or relinquished by either the Payee or the Maker except by written instrument executed by them.**

**Section 14.      Consent to Jurisdiction, Venue and Service of Process**
**The Payee and the Maker, each after having consulted or having had the opportunity to consult with legal counsel, hereby knowingly, voluntarily, intentionally, and irrevocably: (i) consents to the jurisdiction of the District Court of Nueces County, Texas, the United States District Court for the Southern District of Texas, and the United States Bankruptcy Court for the Southern District of Texas with respect to any Litigation; (ii) waives any objections to the venue of any Litigation in either such court; (iii) agrees not to commence any Litigation except in either of such courts and agrees not to contest the removal of any Litigation commenced in any other court to either of such courts;**

**(iv) agrees not to seek to remove, by consolidation or otherwise, any Litigation commenced in either of such courts to any other court; and (v) waives personal service of process in connection with any Litigation and consents to service of process by registered or certified mail, postage prepaid, addressed as provided in the Purchase Agreement. Unless the Parties agree otherwise, all discovery shall be conducted in Dallas, Texas and each party shall bear its own expenses in connection therewith. These provisions shall not be deemed to have been modified in any respect or relinquished by either the Payee or the Maker except by written instrument executed by each of them.**

**Section 15.        FINAL AGREEMENT.**

**THIS DIP NOTE AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE MAKER AND THE PAYEE AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*IN WITNESS WHEREOF,* this DIP Note has been executed and delivered by and on behalf of Maker, effective as of the Date of Note set forth above.

**"MAKER"**

**Iron Horse Tools, L.L.C.**

By: _____

Its: _____