Howard Marc Spector
TBA # 00785023
S.D. Tex. 23274
Sarah M. Cox
TBA #24119316
S.D. Tex. 3408534
SPECTOR & COX, PLLC
12770 Coit Road, Suite 1100
Dallas, Texas 75251
(214) 365-5377
FAX: (214) 237-3380
Hspector@spectorcox.com

COUNSEL FOR THE DEBTOR

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 20-20272** |
| **IRON HORSE TOOLS, LLC** | § | |
| | § | **Chapter 11** |
| | § | |
| Debtor. | § | |

**DEBTOR'S AMENDED APPLICATION FOR APPROVAL OF RETENTION OF
ARG PARTNERS LLC PURSUANT TO 11 U.S.C. § 327(a) TO (I) PROVIDE THE
DEBTOR A CHIEF RESTRUCTURING OFFICER AND CERTAIN
ADDITIONAL PERSONNEL AND (II) DESIGNATE
CHIEF RESTRUCTURING OFFICER FOR THE DEBTOR**

**This motion seeks an order that may adversely affect you. If you oppose the
motion, you should immediately contact the moving party to resolve the
dispute. If you and the moving party cannot agree, you must file a response
and send a copy to the moving party. You must file and serve your response
within 21 days of the date this was served on you. Your response must state
why the motion should not be granted. If you do not file a timely response, the
relief may be granted without further notice to you. If you oppose the motion
and have not reached an agreement, you must attend the hearing. Unless the
parties agree otherwise, the court may consider evidence at the hearing and
may decide the motion at the hearing.**

**Represented parties should act through their attorney.**

**TO THE HONORABLE DAVID R. JONES,
UNITED STATES BANKRUPTCY JUDGE**

COMES NOW, Iron Horse Tools, LLC ("Iron Horse" or "Debtor"), as debtor and debtor-in-possession in the above captioned case (collectively, the "Debtor"), files this application to employ ARG Partners, LLC ("ARG"),  and to designate Chief Restructuring Officer ("CRO") of the Debtor pursuant to 11 U.S.C. § 327(a), together with the previously-filed Declaration of Chris Welsh (attached to Docket No. 40, the "Welsh Declaration" and, collectively, the "Application") and in support thereof, respectfully states as follows:

## I.  JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O). The relief requested in the Application is authorized under Section 327 of the Bankruptcy Code.

2.      Venue of the Debtor's Chapter 11 case is proper in this district pursuant to 28 U.S.C. § 1408.

## II.  BACKGROUND

3.      On the date hereof (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtor continues to operate its business and manage its property as Debtor and Debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No official committee has been appointed, and no request has been made for the appointment of a trustee or examiner.

5.      The Debtor is national provider of pressure control-related equipment and services with seven locations supporting oil and gas operations throughout the country. Among other services, the Debtor provides chokes and related pressure control equipment and software, mud-gas devices, rotating control devices and testing services throughout the United States.

### III.     <u>RELIEF REQUESTED</u>

6.      By this Application, pursuant to Sections 327(a) of the Bankruptcy Code, the Debtor respectfully requests entry of an order (a) authorizing the Debtor to employ and retain ARG as restructuring advisors and (b) designate a Chief Restructuring Officer ("<u>CRO</u>") in accordance with the terms and conditions set forth in that certain engagement letter (the "<u>Engagement Letter</u>"), dated as of August 12, 2020 (See Exhibit "A", Docket No. 40) as it may be amended prior to a hearing on this Application.

### IV.     <u>BASIS TO RETAIN ARG PARTNERS AND APPOINT A CRO</u>

### A.     **ARG PARTNERS' AND QUALIFICATIONS THE PROPOSED CROS**

7.      ARG is a restructuring, liquidation, and asset recovery firm. Specifically, ARG's services include operational and turnaround advisory services, restructuring advisory services, interim management services, including Chief Restructuring Officer services. ARG's professionals have provided financial advisory services to many debtors, creditors and other constituents in restructuring matters throughout the country.

8.      Mr. Welsh is the Managing Partner of ARG Partners with 31 years of experience in commercial lending, distressed transactions, including restructuring, turnaround, workouts, going concern assets sales. Accordingly, Mr. Welsh has significant relevant experience and expertise that will assist him in providing effective and efficient services to the Debtor throughout this chapter 11 case. His recent CRO experience in bankruptcy/restructuring cases includes Carolina Pad and Paper LLC., Cobalt-Vector Aerospace, LLC. and Sunset Logistic.

9.      Mr. Marrietta has over 12 years of experience in a financial role financial services companies or in an internal financial role at companies.  Mr. Marrieta has over four years of finance experience in the oil and gas industry, including a stint in senior management at Flotek (FTK), a

specialty chemical manufacturing and distribution services company headquartered in Houston, TX with approximately 350 employees and $300 million in revenues.

## B.    THE ENGAGEMENT

10.    The Debtor has engaged ARG on the terms and conditions set forth in the Engagement Letter. The Debtor and ARG have agreed that Chris Welsh and Matt Marietta will serve as the Debtor's CRO as discussed below.

11.    Through the CRO, ARG will perform a range of restructuring services on the Debtor's behalf, including but not limited to:

(a)    analyzing the business, operations and financial condition of the Debtor;

(b)    assisting the Debtor with managing short term liquidity, including the preparation of, *inter alia*, 13-week cash flow forecasts and monitoring short term liquidity;

(c)    assisting the Debtor with preparing financial analyses;

(d)    evaluating strategic alternatives;

(e)    assisting the Debtor with the preparation of data in order to prepare pleadings and fiduciary filings required in the Debtor's bankruptcy proceeding;

(f)    providing testimony on such matters that are within ARG's expertise;

(g)    executing restructuring initiatives, including structuring plans of reorganization, assisting in the sale of all or parts of the Debtor, including any marketing thereof and liquidating assets;

(h)    assisting the Debtor and its counsel in negotiations with various parties-in-interest; and

(i)    supporting the Debtor in such matters as the board of directors of the Debtor shall request or require from time to time.

Such services may, in certain circumstances, be delegated to other ARG personnel who will be billed on an hourly basis in addition to the fees charged for the CRO's services.

12.    Mr. Welsh has served as the CRO from the Petition Date, and subject to the Court's approval, will do so until Friday, October 23, 2020.  As of October 23, 2020, ARG

proposes to substitute Matt Marrietta as CRO.  Mr. Marrietta's billable rate is more cost effective than that of Mr. Welsh, and his skill set is perfectly coordinated to assist the Debtor on a day-to-day basis going forward.

## C.   DISCLOSURES CONCERNING CONFLICTS OF INTEREST

13.     To check and clear potential conflicts of interest in this case, ARG has researched its client database to determine whether ARG has or had any connection with, among others, the following entities:

> (a)   the Debtor and affiliated entities;
>
> (b)   the Debtor's secured lender;
>
> (c)   the Debtor's 20 largest unsecured creditors
>
> (d)   the Debtor's equity security holders; and
>
> (e)   counterparties to major contracts;

14.     In order to enable ARG, through the CRO, to perform its duties, the CRO will have (i) access to any and all information that the CRO deems necessary and all employees of the Debtor will be directed to provide that information; (ii) have approval authority for all expenditures over $10,000 and without such approval, no expenditure over the aforementioned amount may be made; and (iii) the authority to direct or restrict funding of any financial or administrative functions in the exercise of his business judgment, after consulting with the Debtor's President and Manager.

15.     To the best of the Debtor's knowledge, and based upon the Welsh Declaration, ARG is a "disinterested person" within the meaning of Section 101(14) of the Bankruptcy Code. To the best of the Debtor's knowledge, ARG does not hold any interest adverse to the Debtor or its estate. Furthermore, to the best of the Debtor's knowledge, ARG does not have any connection with the Debtor, its creditors, or any other party in interest herein, or their respective attorneys or accountants, the United States Trustee or any person employed in the office of the United States

Trustee, except as set forth in the Welsh Declaration.

16.     From time to time, ARG may provide financial consulting and/or consulting services to certain creditors and other parties in interest in matters unrelated to this case. ARG has informed the Debtor that during ARG's retention by the Debtor in this case, it will not provide services to creditors of the Debtor, including, without limitation, any listed in the Welsh Declaration, in connection with any matters relating to the Debtor. However, given its diverse practice and client base, ARG may provide services to clients in matters unrelated to this chapter 11 case that are or become creditors of the Debtor or who may have interests adverse to the debtors in unrelated matters.

**D.     COMPENSATION**

17.     The Debtor and ARG w i s h  t o  enter into the Engagement Letter effective August 12, 2020. Under the Engagement Letter, the Debtor paid ARG a $36,000.00 retainer (the "Retainer") and agreed to pay ARG on an hourly basis upon presentation of weekly invoices, maintaining the balance of the Retainer at $36,000.00.

18.     Prior to the Petition Date, the Debtor paid ARG additional amounts in the aggregate amount of $89,950.17.

19.     In addition, ARG will be reimbursed for its reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging, duplicating, messenger, computer research and telephone charges.

20.     ARG intends to maintain detailed, contemporaneous time records in tenth of an hour increments. If approved by the Court, ARG will be employed as a professional under section 327 of the Bankruptcy Code. ARG will submit fee applications under sections 330 and 331 of the Bankruptcy Code.

21.     ARG's fee structure with the Debtor is consistent with—and typical of—compensation arrangements entered into by ARG and other comparable firms in connection with rendering similar services under similar circumstances. Given the numerous issues ARG may be required to address in performing these services, ARG's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in chapter 11, the Debtor submits that the fee arrangements in the Engagement Letter are reasonable under these circumstances. The proposed compensation is comparable to that generally charged by financial consulting firms of similar stature to ARG and for comparable engagements, both in and out of court.

22.     In light of the foregoing, and given the numerous issues which ARG may be required to address in the performance of its services hereunder, the Debtor believe that the proposed compensation is both fair and reasonable.

23.     As set forth above, ARG rendered prepetition CRO services to the Debtor and received compensation in connection with these services. Some invoices submitted to the Debtor were paid within the 90 day period prior to the Petition Date. These payments are set forth in the Welsh Declaration. ARG believes these payments were made in the ordinary course of business or financial affairs of the Debtor and ARG and according to ordinary business extends net 7 day payment terms and caps weekly billings.  In addition, ARG continued to perform services for the Debtor which would constitute new value under section 547 of the Bankruptcy Code.

**E.     THE INDEMNITY**

24.     As set forth in the Engagement Letter, the Debtor agrees to indemnify the CRO to the same extent as the most favorable indemnification it extends to its officers or directors, whether

under the Debtor's bylaws, its certificate of incorporation, by contract or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to CRO. IN addition, the CRO shall be covered as an officer under the Debtor's existing director and officer liability insurance policy.

25.     The indemnity is a reasonable term and condition of the Engagement and a similar form has been approved by several other Courts in this and other Districts. Unlike the market for other professionals that a debtor may retain, indemnification is a standard term of the market for firms that provide restructuring, turnaround and crisis management services. In fact, the indemnity is comparable to those generally obtained by firms of similar stature to ARG and for comparable engagements, both in and out of court.

26.     The indemnification of interim management, financial consultants and investment bankers is reasonable and, indeed, commonly approved in connection with the retention of such professionals. *See, e.g., In re United Artists Theatre Company*, 315 F.3d 217, 230 (3d Cir. 2003) ("[W]e believe Houlihan Lokey's indemnification to be reasonable and therefore permissible under § 328."); *In re Joan and David Halpern, Inc*., 248 B.R. 43 (Bankr. S.D.N.Y. 2000), aff'd, 2000 WL 1800690 (S.D.N.Y. Dec. 6, 2000); *see also In re DEC International, Inc.*, 282 B.R. 423, 429 (W.D. Wis. 2002) (affirming bankruptcy court's finding that indemnity of financial advisor was reasonable); *In re Comdisco, Inc*., 2002 WL 31109431 at *6 (N.D. Ill. Sept. 23, 2002).

## V.     <u>CONCLUSION</u>

27.     The retention of ARG and its professionals is a sound exercise of the Debtor's business judgment. Mr. Welsh and Mr. Marietta have extensive experience with providing restructuring and related advisory services to many troubled companies, and is a seasoned turnaround and restructuring expert. Moreover, the terms of the Engagement Letter were the

product of arms-length negotiations and are economically fair, reasonable and beneficial to the estate. The compensation agreement provided for in the Engagement Letter is consistent with and typical of arrangements entered into by other restructuring consulting firms with respect to rendering similar services for clients such as the Debtor. In light of the foregoing, the Debtor believes that the retention of ARG and a CRO, in conjunction with the other Professional Staff provided by ARG, will provide services that benefit the Debtor's estates and creditors.

The Debtor respectfully requests that the Court enter an order (i) approving the retention of ARG and the appointment of Chris Welsh and Matt Marrieta as CRO pursuant to Section 327 of the Bankruptcy Code; (ii) approving the compensation terms set out above; and (iii) granting such other and further relief as may be just and proper.

Dated: October 20, 2020.

Respectfully submitted,

By:      /s/ Howard Marc Spector
Howard Marc Spector
TBA #00785023

SPECTOR & COX, PLLC
Banner Place, Suite 1100
12770 Coit Road
Dallas, Texas 75251
(214) 365-5377
FAX: (214) 237-3380
EMAIL: hspector@spectorcox.com

COUNSEL FOR DEBTOR